# Thompson, Trustee of Laing, *versus* Paret & Co.

94   275<br>127   506

1. Whatever the form of an agreement for the change of possession of goods, if its purpose is to cover up a sale, and preserve a lien in the vendor for the price of the goods, as by a pretended consignment, it is void as respects creditors, whether the credit was given before or after the delivery of the goods. A consignment for such object is no better than any other device.

2. Rose *v.* Story, 1 Barr 190, followed.

April 1st 1880.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    GREEN, J., absent.

Error to the Court of Common Pleas of *Northampton county :* Of January Term 1880, No. 301.

Feigned issue under the Sheriff's Interpleader Act, wherein John Paret and Frederick E. Bacon, trading as John Paret & Co., were plaintiffs, and L. A. Thompson, trustee of Hannah M. Laing, was defendant, to determine the right to a lot of clothing levied on as the property of W. H. Laing.

At the trial, before Meyers, P. J., it appeared that on the 7th of December 1879, Thompson, as trustee of Hannah M. Laing, obtained a judgment by confession against W. H. Laing, and on the 12th of the same month levied on a lot of ready-made clothing found in Laing's store. These goods were afterwards claimed by Paret & Co., who alleged that they were consigned and not sold to Laing. According to the testimony of John Paret, one of the plaintiffs, he agreed to consign goods to Laing upon the following terms and conditions: Laing was to convey to him as collateral security a house and lot of ground in Rahway, N. J., valued at $3000, upon which there was a mortgage of $1000; also assign to him a mortgage of $1000, which Laing held against property in Somerville, N. J. The goods were to be consigned at the lowest cash prices, upon which Laing was to pay interest after thirty days. The understanding was that Laing was to sell for cash, to have all the profits, and was to report sales weekly or

[Thompson *v.* Paret & Co.]

oftener, and that any broken lots of goods which might remain unsold at the end of the season were to be paid for by Laing.

He further testified that nothing was said about the property in the goods except that they were to be consigned subject to the order of the firm.

On the 14th day of August 1879, Laing called on John Paret at his place of business in New York, and delivered to him the following letter from J. D. Bartine, his counsel:

"Somerville, N. J., August 14th 1879.

John Paret, Esq.,

Dear Sir: Mr. W. H. Laing has requested me to draw a paper giving you a claim on all goods furnished him by you at any time in excess of $3000.

As you have placed him under obligations to you, he desires that the paper shall be prepared in accordance with your request. If you will be kind enough to communicate your desire, I will draw the paper in accordance therewith. The object of this letter is to have the paper drawn according to your wishes.

Yours very truly,

J. D. Bartine."

In reply to the letter of Bartine, Paret, on the same day, wrote and delivered to Laing the following letter:

"New York, August 14th 1879.

J. D. Bartine, Esq.,

Dear Sir: Your favor of the 14th instant is at hand. While I do not anticipate Mr. Laing's becoming in any way involved, yet in view of the proposed business arrangements, it is necessary for us to provide for all *possible* contingencies; and for Mr. L.'s protection as well as our own, I think it desirable to so arrange the matter that his stock could not possibly be subject to any attachment or judgment. I do not know that this could legally be accomplished by a bill of sale, unless a new one be given for every purchase. But I have suggested to Mr. Laing that the object may more easily be attained by our '*consigning*' the goods to him and so marking our invoices and books. By this means we would retain the title, and in case of any difficulty the goods would be ours and not subject to any other indebtedness of Mr. L. It would of course be understood that the goods are not to be returned to us except at our desire.

I am willing to accept any arrangement which you and Mr. L. may prefer which will fully accomplish the object.

Yours truly,

John Paret."

On the 19th of August, five days after the above letters were written, the deed for the property in Rahway and the $1000 mort-

[Thompson v. Paret & Co.]

gage having been delivered to Paret as collateral security, the first lot of goods were shipped to Laing. Several lots of goods were sent to him, some to Somerville, N. J., and some to Easton, Pa., after he had removed his store to the latter place. The total amount shipped, according to the testimony of Paret, was $3297.27. On each of the invoices the words "sold by" were erased and the words "consigned by" inserted.

It further appeared that one of the plaintiffs went to Laing's store on the day of the levy, complained of the lack of sales, claimed title to the goods, proposed their return to New York, and obtained Laing's assent thereto, who promised to assist in packing them, and that then the levy was made by the sheriff.

Laing testified that it was distinctly understood that the plaintiffs were to take none of the goods back, and that he was to pay interest on them after four months. He admitted that he wanted the goods consigned to him for his protection. He also said he bought goods of other parties, and at the time of the sheriff's levy he had $1600 worth of these goods, which were mixed with the goods claimed by Paret & Co. His whole stock was insured in his name.

As evidence to show that plaintiffs refused to take back any of the goods, the defendant put in evidence the following letter:

"Oct. 15th 1879.

Mr. WM. H. LAING, Easton, Pa.

Dear Sir: Your favor of the 13th inst. received, and we reply that the black cheviot suits you wish to return are all closed out of our stock, and we cannot take them back, as the lots have been closed on our books. If we had any of them still unsold we might exchange them, but, under existing circumstances, must beg to be excused.

Very truly yours,

JOHN PARET & Co.,
J. H. BUTLER."

In the general charge the court, inter alia, said: ["It is claimed by the defendant that although the evidence might warrant you to find apparently a contract of bailment between these parties, if the contract was put in that form, merely for the purpose of hindering, delaying and defrauding the creditors of William H. Laing, and thus committed a fraud in fact, that then you must find for the defendant. Before you can find that there was such fraud in fact perpetrated by William H. Laing and John Paret, you must be satisfied that when they entered into the arrangement, the purpose and intention of both of them was to defraud.] A letter from John Paret dated August 14th 1879, is referred to as bearing upon the question of the character of the contract. (Letter read to the jury.) If the letters satisfy you that the purpose and intention of

[Thompson *v.* Paret & Co.]

John Paret & Co., and William H. Laing was to sell the goods to William H. Laing, that it was to be put in such form that whenever a creditor should levy upon the goods that then they were to be the property of John Paret & Co., but if no creditor came and interfered with them, that then they were to be the property of William H. Laing; if you can gather from this letter such a state of affairs, then you have a right to use it for what it may be worth. If, however, this letter is consistent with the testimony of John Paret, that he refused to make a contract of sale with William H. Laing, but preferred to make a contract by way of bailment by merely consigning the goods to William H. Laing for the purpose of sale, they, the plaintiffs, retaining the title to the property during the time and subject to their order, then the letter may have little bearing on the question of fraud. [There is no evidence of actual fraud in this case], and that John Paret and William H. Laing entered into an arrangement for the purpose of hindering, delaying and defrauding the creditors of William H. Laing. Even William H. Laing, the sole witness for the defendant and the party to the contract, does not testify to any fraud, but according to his testimony it was an out and out sale. It is also contended by the plaintiffs that if the goods were transferred by William H. Laing to Frederick E. Bacon, one of the plaintiffs, on the 12th of December last, and possession taken of them by him before the execution came into the hands of the sheriff, that then even if you should find that the arrangement between John Paret and William H. Laing was not a contract of bailment, that the plaintiffs are entitled to recover. Such is the law on a proper case."

Verdict for plaintiffs, when defendants took this writ, and alleged that the court erred in those portions of the above charge included in brackets.

*William Mutchler*, for plaintiffs in error.—If the consignment of the goods was not made in good faith, but was a mere device whereby the plaintiffs sought to obtain a secret lien on them ; or if the transaction whereby Laing obtained possession of the property had a tendency to impart a delusive credit to it, then it was a fraud as to creditors, and the transaction must be treated as a sale and not as a bailment. " Fraud in fact," says THOMPSON, C. J., in Milne, Browne & Co. *v.* Henry, 4 Wright 357, " rests mainly upon fraudulent intent, and the facts establishing this are necessary for the jury." The court below charged that the fraudulent intent must have existed in the minds of both the contracting parties, in order to make the transaction a fraud in fact. We contend that this was error, and that there was abundant evidence to show that the contract between these parties was made with the intent to defraud. We also maintain that the evidence proves the transaction to have been a sale and not a bailment.

[Thompson v. Paret & Co.]

*M. H. Jones* and *Robert I. Jones*, for defendants in error.—In the charge as delivered, the sentence "There is no actual fraud in this case," does not follow in the connection shown by the assignment of error. It is not just to the court to separate the phrase from its context: Reeves v. Delaware, Lackawanna & Western Railroad, 6 Casey 460. McCullough v. Porter, 4 W. & S. 177, is the case at bar, with this material difference in our favor, that there the bailee was admittedly insolvent; but here the only evidence is that Laing was without debts and owned property besides. In McCullough v. Porter, *supra*, the groceries were consigned to be sold at not less than invoice prices, and the agreement being in writing was construed by the court. Whether the agreement was merely colorable was left to the jury as it was below in our case. The question of fraud in fact has properly no relevancy here. This is only material, where a vendor being insolvent conveys or makes some kind of transfer apparently for valuable consideration, with delivery of possession with the intent to hinder, defeat or defraud creditors. But to avoid a contract made on valuable and ample consideration both parties must intend to share in the forbidden fraud: Towar v. Barrington, Bright. R. 260, citing Maginiac v. Thompson, 7 Peters 361. If a conveyance be not fraudulent when made it shall not be so ever afterwards: Beck v. Parker, 15 P. F. Smith 264; United States v. Mertz, 2 Watts 206. There was no error, therefore, even assuming that the court gave a binding direction to the jury against actual fraud, because in this issue it could not have availed Hannah M. Laing, a subsequent creditor. The testimony of Bacon was not controverted by any evidence in the cause, and is conclusive that before the writ he had actual possession of the clothing with the assent of Laing, and was preparing the merchandise for re-shipment to New York, and, therefore, we say no title passed by the subsequent levy.

Mr. Justice TRUNKEY delivered the opinion of the court, May 3d 1880.

From the testimony of Paret the jury could have found an agreement to consign goods to Laing for sale, the invoice prices to be paid weekly or oftener if sales warranted, and all above said prices to be retained by the consignee for his own use, with right in the consignors to reclaim their unsold goods at any time. Such an agreement is a bailment, as was the contract in McCullough v. Porter, 4 W. & S. 177, and the agent or factor had no interest in the goods subject to levy and sale. If Laing's testimony was true the goods were sold absolutely, and the vendors had no right to their return. The court quite fully and fairly instructed the jury in case of their finding a bailment, or "an out and out sale;" and of those instructions there is no complaint.

It is alleged by the plaintiff in error that the apparent contract

[Thompson *v.* Paret & Co.]

of bailment was a mere device to cover up a sale so as to enable.the defendants to have a secret lien on them -for the purchase-money, and that the court erred in the portion of the charge which relates to this view of the case.   Although the assignment does not set out all the court said on this point, yet it truly gives the gist of the instruction—the omitted part being the reference to testimony. It may be noted that the court spoke of the alleged device as made to defraud Laing's creditors, and, after reading and commenting on Paret's letter, said, " There is no evidence of actual fraud in this case, and that John Paret and William H. Laing entered into an arrangement for the purpose of hindering, delaying and defrauding the creditors of William H. Laing."   This may have been intended in a sense literally true, but if so, it did not meet the case; for Laing was not in debt, the arrangement was not to cheat creditors he then had; it was to prevent any future creditor taking the goods, because of the title and lien of the vendors.   " If the vendor and vendee agree that the possession shall pass to the vendee, but the property remain in the vendor until the purchase-money is paid, such agreement, as respects creditors and the sheriff, is fraudulent.   By transferring the possession to the vendee under such a contract, a false credit is given to the vendee, and therefore in respect of third persons, as he is the apparent so he is to be considered the real owner;" Per ROGERS, J., Rose *v.* Story, 1 Barr 190.   Whatever the form of the agreement, if its purpose was to cover up a sale and preserve a lien in the vendors for the price of the goods, it was void as respects creditors, whether the credit was given before or after the delivery of the goods.   A consignment for such object is no better than any other device.

Laing assigned a mortgage and conveyed a lot as collateral security for goods to be delivered.   His attorney, Bartine, wrote to Paret that Laing had requested him to draw a paper giving Paret a claim on all goods furnished in excess of $3000, and asking his wishes concerning the paper.   On the same day, August 14th 1879, Paret replied, " While I do not anticipate Mr. Laing's becoming in any way involved, yet in view of the proposed business arrangements, it is necessary for us to provide for all possible contingencies; and, for Mr. L.'s protection as well as our own, I think it desirable to so arrange the matter that his stock could not possibly be subject to any attachment or judgment.   I do not know that this could legally be accomplished by a bill of sale, unless a new one be given for every purchase.   But I have suggested to Mr. Laing that the object may more easily be attained by our ' consigning' the goods to him and so marking our invoices and books.   By this means we would retain the title, and in case of any difficulty the goods would be ours and not subject to any other indebtedness of Mr. L.   It would, of course, be understood that the goods are not to be returned to us except at our desire."   The

[Thompson v. Paret & Co.]

goods were consigned, the invoices and books so marked, Laing charged with their net cash value at thirty days and with average interest after thirty days. Paret & Co.'s letter of October 15th 1879 shows a refusal to take back goods. Laing did business in his own name and also had goods bought of others. The oral statements of Paret and Laing conflict. If the contract were proved by the letters alone the court would declare their meaning, but they are to be considered with the other testimony, and the whole is for the jury. The jury were correctly instructed, in case they found a real consignment—also if they found an absolute sale. But we think the testimony was ample to warrant a finding that there was a sale of the goods, which was covered by a sham consignment, and that in respect to such fact, if found by the jury, they should have been instructed that the arrangement was void as against a creditor of Laing.

Judgment reversed, and a *venire facias de novo* awarded.