# D. T. PEEK ET AL. v. D. HEIM ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHUMBER-
LAND COUNTY.

Argued May 29, 1889—Decided June 28, 1889.

(*a*) By the "terms of consignment" attached to an invoice and accepted by the consignee, it was stated that the goods consigned were the property of the consignors, were so to remain until fully paid for, and that the consignors shipped and delivered them upon the express condition that the consignee should remit a sum certain therefor, within a time certain, or return the goods.

1. The transaction, evidenced by such terms, was not a bailment but a sale to the consignee, with an agreement that the title was to remain in the consignors until the price was paid: the arrangement was valid between the parties to it, but the secret lien attempted to be created could not affect the consignee's creditors.

2. Whatever the form of the agreement, if the purpose of it is to cover up a sale and preserve a lien in the vendors for the price of the goods, it is void as respects creditors of the vendee, whether the credit is given before or after the delivery of the goods; a consignment for such an object is no better than any other device.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

No. 85 July Term 1889, Sup. Ct.; court below, No. 236 December Term 1888, C. P.

On November 14, 1888, a feigned issue was framed, as directed by the court, wherein David T. Peek and Geo. W. Peek, trading as Peek & Son, were plaintiffs, and D. Heim and Ira T. Clement were defendants, to determine the ownership of seven pianos levied upon by the defendants on writs of fieri facias as the property of F. K. Hill, and claimed by the plaintiffs.

At the trial on May 7, 1889, the following facts were made to appear:

In 1886 F. K. Hill and H. B. Neff were engaged in the organ manufacturing business at Sunbury, Pa., trading as Hill & Neff. The firm became insolvent, and D. Heim and Ira T.

Clement, respectively, obtained judgments against the partners which remained unpaid out of execution sales of the partnership assets.

On December 10, 1886, Hill wrote to H. J. Raymore, the manager of defendant firm, asking to sell pianos for them, and effected an arrangement so to do. In the correspondence he stated expressly that he wished the title to remain in the defendants. On seven different occasions, beginning with February 21, 1887, and ending with January 27, 1888, the defendants shipped a piano to said Hill, the invoices being in the following form:

"CONSIGNEE'S INVOICE.

" No. C. 273.

"Memorandum of piano shipped on special consignment to F. K. Hill, of Sunbury, in the state of Pennsylvania, by Peek & Son, of New York city, and received by said F. K. Hill on the terms of shipment and delivery printed on the reverse side of this invoice."

On the reverse side of the invoice was printed the following:

"TERMS OF CONSIGNMENT.

" No. C. 273.

" The piano named and invoiced upon the memorandum of special consignment on the reverse side hereof is the property of Peek & Son, of New York city, and is to remain their property until fully paid for; and said Peek & Son ship and deliver the same upon the express condition that F. K. Hill of Sunbury, in the state of Pennsylvania, shall remit the sum of one hundred and sixty-five dollars to them therefor, within . . . . . from the date hereof, or return the said piano to them at the expiration of said time, at the expense of said F. K. Hill, for freight, cartage and storage. In case a note is given, it is understood to be for accommodation, and not in payment of said piano.

"N. B. The annexed coupon to be detached and signed by consignee, upon receipt of goods, and forthwith mailed to Peek & Son, New York city."

The said annexed coupon was the following:

"CONSIGNEE'S AGREEMENT.

" C. 273.

"One F. K. Hill, of Sunbury and State of Pennsylvania,

consignee of piano from Peek & Son, of New York city, as per consignment invoice No. C. 273. One piano, style 1 No. 10064, and I do receive the same as the property of said Peek & Son; and said piano is to remain the property of said Peek & Son till the invoice price of one hundred and sixty-five dollars is fully paid them; and I do further agree to pay to the said Peek & Son, for said piano, the sum of . . . . . within . . . . . from this date, or to return them the said piano in as good order and condition as when received, at the expiration of said term at my own expense for freight, cartage and storage. In case a note is given it is understood to be for accommodation, and not in payment of said piano.

"N. B. This coupon to be detached from invoice and mailed Peek & Son, New York city, duly signed, immediately upon receipt of goods invoiced."

All the invoices were the same in terms, except that in some of them the words "within," "from the date hereof" and "at the expiration of said time" were erased from the "Terms of Consignment," and the words "and I do further agree to pay to the said Peek & Son, for said piano, the sum of . . . . . from this date, and at the expiration of said term," or a part of said words, were erased from the "Consignee's Agreement."

Hill continued to do business for the plaintiffs, selling and receiving pianos, until September, when Heim and Clement issued executions on their judgments and the sheriff levied on the pianos in suit. Peek & Son claimed the pianos, and under the sheriff's interpleader act this feigned issue was formed.

At the conclusion of the case on the evidence, the court, BUCHER, P. J., 20th district, holding special term, charged the jury, inter alia, as follows:

[Whether Mr. Hill received the pianos in dispute as the agent or factor of the plaintiffs to sell for them, or whether the transaction between him and the plaintiffs was a conditional sale, depends on the contract between the parties. We permitted the plaintiffs, under the objection of the defendants, to give in evidence the correspondence which passed between them and Mr. Hill leading to the contract, as well as the conversations had by him with one of the plaintiffs in the city of New York, prior to the delivery of these pianos to Mr. Hill.

Charge of Court below.

It is insisted by the learned counsel for the defendants that the consignee's agreement, consignment invoice and terms of consignment which accompanied each piano, the piano going by freight and the consignee's agreement, etc., going by mail, constitute the sole agreement between these parties; that all the evidence given by the plaintiffs, consisting of telegraphic dispatches, letters and the conversations had by word of mouth between Mr. Hill and one of these plaintiffs in the city of New York, prior to the shipment of the pianos in dispute, is to be disregarded in the determination of what was the real contract between the parties; that the case should be decided simply and solely upon the agreements which were sent by mail to Mr. Hill. Gentlemen of the jury, we admitted this evidence for the purpose of enabling us to get the whole case before the court, in order that we might more accurately determine and ascertain the nature of the contract between these parties. After hearing this evidence, I have reached the conclusion that the case is to turn and be decided upon the written consignments and consignee's agreements that were forwarded by the plaintiffs, at the time they shipped the pianos to Mr. Hill; that all the evidence that was admitted as introductory to the contract is to have no weight whatever in your deliberations. I therefore charge you that you are to disregard that evidence and that the case is to be determined solely upon the construction to be given to the consignee's agreements, consignment invoices and the terms of consignment, which were executed by the plaintiffs on one side and by Mr. Hill on the other, upon the receipt of these respective consignments of pianos.] [4]

Now, then, the nearest case upon the subject that I know of is the one which I have already alluded to, the case of McCullough v. Porter, 4 W. & S. 177. . . . . The court there held that under the contract the relation of factor existed between the party to whom the goods were sent and the party who sent them to him. [But in the papers before us there is no stipulation that Mr. Hill was to sell these goods as the agent or factor of Peek & Son, who shipped them to him, and in that part of it differs radically from the case of McCullough v. Porter, to which I have just alluded. It may have been the intention of the parties who concocted these consignee's agreements, consignment invoices and terms of consignment, to establish

such a relationship between the plaintiffs and F. K. Hill, but, gentlemen of the jury, I instruct you that the agreement fails to carry out and consummate such a purpose. There is no provision or stipulation in them whereby F. K. Hill was to sell these goods as the agent or factor of these plaintiffs. But, on the other hand, it looks to me and I so charge you that these papers on their face constitute what is denominated in law a conditional sale. It was a fraud on the part of Peek & Son to sell these pianos to F. K. Hill and retain a lien upon them until they received the price named in the invoice. Such contracts are forbidden by the law, as we have already told you, and for this reason we charge you that under all the evidence you ought to find a verdict in favor of the defendants.] [5]

The plaintiffs have presented some points to me which I will answer and then I am done.

1. The evidence in this case shows that F. K. Hill, to whom Peek & Son consigned the pianos in suit, was a mere factor, who had a right as such factor to sell goods in his own name; and the evidence showing that the pianos were clearly distinguishable in Hill's hands as the property of Peek & Son, at the time of the levy, the defendants had no right to levy upon them as creditors of Hill, and the verdict of the jury must be in favor of the plaintiffs.

Answer: Refused.[1]

2. The consignment agreements in this case do not constitute the whole contract between Peek & Son and F. K. Hill as to the property in dispute, but are such conditions as a consignor has a right to attach to a particular consignment to a factor, and do not in themselves change the title or ownership in the goods; the true relationship or agreement between the parties being shown by the whole course of their dealing.

Answer: Refused.[2]

3. That under all the evidence in the case the verdict of the jury must be for the plaintiffs.

Answer: Refused.[3]

The jury returned a verdict in favor of defendants, and judgment was entered thereon, when the plaintiffs took this writ, assigning as error:

1–3. The answers to plaintiffs' points.[1 to 3]

4, 5. The portions of the charge embraced in [ ] [4] [5]

*Mr. Lewis Dewart,* for the plaintiffs in error.

*Mr. S. P. Wolverton* (with him *Mr. George B. Reimensnyder,* for the defendants in error.

PER CURIAM:

This was a feigned issue under the sheriff's interpleader act. The pivotal question is, whether the property levied upon by the sheriff had been consigned to Hill, the defendant in the execution, as the factor or consignee of Peek & Son, to be sold by him on their account, or whether the transaction amounted to a conditional sale with an attempted reservation of a lien for the price. The court below took the latter view of it and instructed the jury accordingly. All of the assignments of error bear upon this point.

We see no error in the ruling of the court. The whole contract appears from the two papers, the one headed " Terms of Consignment," and signed by Peek & Son, and the other headed " Consignee's Agreement," and signed by F. K. Hill. It is true the words " consignor " and " consignee " appear sufficiently conspicuous, but these are merely labels which the parties have placed upon the transaction; we must look within to see its real nature, and it is immaterial what the parties designate it. We thus learn from the " Terms of Consignment " that the piano named and invoiced, and consigned to Hill, " is the property of Peek & Son, of New York city, and is to remain their property until fully paid for; and the said Peek & Son ship and deliver the same upon the express condition that F. K. Hill of Sunbury, in the state of Pennsylvania, shall remit the sum of one hundred and sixty-five dollars to them therefor, within . . . . . from the date hereof, or return the said piano to them at the expiration of the said time, at the expense of the said F. K. Hill." Then follows the " Consignee's Agreement," by which Hill acknowledges having received the piano on consignment; that it is to remain the property of Peek & Son until paid for, and if not paid for, to be returned at his own expense, etc.

That this was not an ordinary transaction between consignor

and consignee is too plain for argument. Where goods are consigned to a factor for sale, they remain the property of the consignor and are not subject to the debts of the factor, and no ingenious contract is required to protect them from his creditors. There is nothing upon the face of the papers to indicate that Hill was to sell the pianos for the account of Peek & Son, as their factor. On the contrary it was manifestly a sale to Hill, with an agreement that the title was to remain in Peek & Son until the price was paid. The arrangement was good between the parties, but worthless as to Hill's creditors. The secret lien attempted to be created cannot affect them. It would seem almost a waste of time at this late day to cite authority for so evident a proposition. I will refer, however, to Thompson v. Paret, 94 Pa. 275, where it was said by our late brother TRUNKEY: "Whatever the form of the agreement, if its purpose was to cover up a sale and preserve a lien in the vendors for the price of the goods, it was void as respects creditors, whether the credit was given before or after the delivery of the goods. A consignment for such object was no better than any other device." See also Stadtfeld v. Huntsman, 92 Pa. 53; Forrest v. Nelson, 108 Pa. 481. These decisions are in harmony with a long line of cases which are familiar to the profession. What we have said covers all the assignments of error.

Judgment affirmed.

On October 14, 1889, a motion for a re-argument was refused.