## In re RABENAU.

(District Court, W. D. Missouri, S. D. October 30, 1902.)

1. BANKRUPTCY—CONDITIONAL SALES OF GOODS TO BANKRUPT—CONSTRUCTION OF CONTRACT.

Where a consignee of goods from a wholesale house is at liberty to sell at any price and on any terms he pleases, accounting therefor at a fixed price to the consignor, and where he is required to pay the freight, taxes, and insurance on the goods, to be responsible for them in case of loss, and at a fixed time to pay for such as remain unsold, at the option of the consignor, he is not an agent or factor, but the transaction is one of conditional sale, whatever name may be given it by the contract; and, under the statute of Missouri, the attempted reservation of title in the

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 199.

consignor is void as against purchasers or creditors of the consignee, either past or subsequent, and it is also void as against his trustee in bankruptcy, who stands in the same position as the creditors, under such statute, and the consignor has only the rights of an ordinary creditor.

2. SAME.

The fact that the bankrupt, for purposes of his own, in making sales represented himself as merely the agent of the consignor, cannot affect the construction of the contract, nor enlarge the rights of the consignor thereunder as against other creditors.

In Bankruptcy. On questions certified by referee.

Allen & Rathbun, for claimant.

John S. Farrington, for objecting creditors.

PHILIPS, District Judge. This case has been certified to the court by the referee in bankruptcy, to determine the question as to whether the transaction in question was that of a mere bailment of goods sent by the consignor to the bankrupt as a factor, or whether or not the transaction in question was a conditional sale of goods, in contravention of section 3412, Rev. St. Mo. 1899.

The claimants, Bradley, Alderson & Co., wholesale merchants, selling agricultural implements and machinery at Kansas City, Mo., presented to the referee, for allowance as a preferred claim, a balance due for certain merchandise, consisting of farming implements, etc., amounting to $496.85, for the amount of goods in the possession of the bankrupt at the time of the adjudication in bankruptcy. Other creditors of the estate objected to the allowance of this claim, and, the referee having allowed the same as a preferred claim, the objecting creditors had the question certified to this court for review.

The firm of Bradley, Alderson & Co. had printed and used in their business for making contracts with country merchants a pamphlet, in size about four by nine inches, yellow in color, containing the prices current of all goods, machinery, and the like, sold by them, with the discount and net prices, with blank places in the back part thereof, under printed heads, for the enumeration of articles ordered by such merchants. The form of the order to be sent into the house is printed on the same kind of paper, and as a part of the pamphlet, headed on the first page, "Wholesale Order Blank," beneath which are the words: "Delivery f. o. b. cars Kansas City unless otherwise specified. Prices subject to change without notice." On this page some blanks seem to have been filled up by the bankrupt. The following two pages contain the contract or order sent in by the bankrupt in the case in question, beginning as follows:

"Kansas City, Mo., 11/11, 1901.

"Bradley, Alderson & Co., Kansas City, Mo.: Please ship the following order for goods on or about Jan. 1st, 1902, sooner if possible, or as soon thereafter as possible, to H. Rabenau, Fordland, Mo. Ship via Gulf. For which I agree to pay according to prices and terms as stated in the list hereto attached. In consideration of the covenants herein mentioned, and the sum of one dollar, the receipt of which is hereby acknowledged, I agree as follows."

The substance thereof is: (1) He was to make settlement whenever required by Bradley, Alderson & Co. for all goods shipped on this contract, with exchange on Kansas City, and pay all notes

given in settlement at maturity, or, if cash terms were agreed upon, to remit promptly on receipt of invoice, with exchange on Kansas City. (2) He was to pay all freight and charges on goods shipped, and, when the goods were sold "delivered," the freight to be paid by him, and applied on the first payment, without cash discount. All prices were for delivery f. o. b. cars Kansas City, Mo., unless otherwise provided in the order. (3) The same provisions to apply to all subsequent orders for the same season's trade, prices being subject to change at the option of Bradley, Alderson & Co. (4) Any claims for shortage or damages to be made within five days after the receipt of the goods; and the consignee was to look to the transportation companies for all goods lost, short, or damaged, shipped under the contract, if receipted for in good order. (5) He was to be responsible for all goods shipped under the contract on account of loss or damages by fire or the elements. (6) Not to sell outside of the territory described. There seems to have been no limit as to the territory. (7) He was to pay 25 per cent. of the net amount of the order as liquidated damages in the event of countermanding his order before shipment. (8) "All goods shipped under this contract, and the proceeds of sale thereof, shall be and remain the property of Bradley, Alderson & Co., and subject to their order at any time, until the full amount of the purchase price of said goods, with interest thereon, or notes given for said purchase price, be entirely paid; also that in case of death, sale of business, or change of membership in the firm making this order, all accounts or notes for goods bought under this contract shall become immediately due and payable." The remaining provision of the contract was as to the character of the warranty made by Bradley, Alderson & Co., and notice of defects and time in which repairs were to be made by them. All accounts were to draw 8 per cent. interest after maturity. This contract was signed by Rabenau and by Bradley, Alderson & Co.

Then there is another contract between these parties, purporting to be of the same date, printed with blanks to be filled in with the character of the goods ordered, etc., for payments, on different colored or tinted paper, and pasted inside of said pamphlet, to the order aforesaid, with the heading "Consignment Contract," which is substantially as follows: This agreement, made and entered into this 11th day of November, 1901, by and between Bradley, Alderson & Co., a corporation, of Kansas City, Mo., party of the first part, and H. Rabenau, of Fordland, Mo., party of the second part. It then recites that in consideration of $1, and other valuable considerations, Rabenau accepts the agency of certain lines of goods handled and sold by the party of the first part, and agrees to sell the same on consignment. He was to pay the freight on all goods shipped, on the basis of the contract, and house and protect them from the weather and elements, and to sell at retail as agent of the party of the first part; sales on time to be made only to good and responsible parties. He was to take up and pay in cash any and all notes pronounced unsafe or doubtful, upon request of the party of the first part. The list prices thereto attached were declared to be the prices at which said goods should be billed, and the same were not to be sold by said Rabenau for less than said

figures. All sums received by him for the sale of goods, over and above said prices, to be retained as his compensation and commission for the performance of the contract; and he was to remit to the party of the first part the proceeds of said goods at the invoice prices in settlement of any sales made, as follows: For goods sold for cash, he was to remit in cash at the time of the sale, less the cash discount as stated below; and on time sales he was to remit the purchasers' notes (evidently taken made payable to Rabenau), drawing 8 per cent. interest from date, with the time fixed for their payment on certain articles. He was to sell for one-third cash; and he was to indorse all purchasers' notes, and guaranty their payment at maturity, and was to make reports of sale and settlement and remittances on the 1st day of each month. And the mode of settlement, as to certain kinds of goods, was fixed until May 1, 1903, and on others November 1, 1902, with no cash discounts thereafter; and all goods of the specified kinds on hand at said dates he agreed to purchase and pay for on different specified articles July 1, 1903, certain others on January 1, 1903, and others on December 1, 1902, with 8 per cent. interest from maturity, "at option of party of the first part, or, if party of the first part so elects, said goods to remain in possession of party of the second part on the basis of this agreement, subject to settlement provided for goods as sales are made only. Any and all goods shipped on the basis of this contract to be and remain absolutely the property of the party of the first part, and subject to their order and removal at any time and all times." Rabenau was to be responsible for all damages for loss by fire or otherwise to any of the goods shipped. He was to pay all taxes and insurance thereon. This contract was signed by both parties.

The referee admits his embarrassment at trying to comprehend this duplex transaction. Counsel for claimant avoid any worry over the matter by basing their contention solely on the so-called consignment contract. If it were essential that the court should assign a reason for this doubling of contracts, it would say that this wholesale house sent out the printed pamphlet, containing the form printed therein, as a bait for country merchants, to sign and send in; and after they had filled, signed, and sent it, the "consignment contract" was held in reserve, and then presented for the signature of the merchant, whereby the seller, as he supposed, had cunningly evaded the provisions of the statute of the state which, in effect, declares to be void, as to all subsequent purchasers in good faith, and all creditors, both prior and subsequent, all conditional sales of personal property, unless the same is evidenced by writing, duly acknowledged and recorded, as in case of mortgages of personal property.

It is conceded by counsel herein that, if Rabenau was acting merely as a factor for the sale of the goods, the case was rightly decided by the referee; otherwise not. The ordinary definition of a "factor" is that he is a commercial agent employed by a principal to sell merchandise consigned to him for that purpose on behalf of the principal. He may hold them either in the name of his principal or in his own name, and he is to be remunerated by a fixed commission, either expressed or implied. He is intrusted with the possession thereof, and

authorized to sell and receive payment therefor from the purchaser. The text-books assert the general rule to be that if the goods are consigned to be sold for the consignor, "who is to regulate the price and terms of sale, the factor is an agent, and the contract one of bailment. If, however, the consignee is to sell upon terms fixed by himself, and is bound to pay to the consignor a fixed price, the contract is one of sale." So Newmark on Sales (section 23) says:

"But the relation of the parties is not that of principal and agent, if the consignee is at liberty, according to the contract between him and the consignor, to sell at any price he likes, and receive payment at any time he likes, though he is bound, if he sells the goods, to pay the consignor for them at a fixed price and a fixed time."

So it is held in Kellam v. Brown, 112 N. C. 451, 17 S. E. 416, that:

"Where the goods are consigned for sale to one who is at liberty to sell at any price and on any terms he pleases, paying a fixed price to the owner, the consignee is not a factor, and the contract is one of sale."

This rule is announced in Ex parte White, 6 Ch. App. 397, as follows:

"If the consignee is at liberty to sell at any price he likes, and receive payment at any time he likes, but is bound if he sells the goods to pay the consignor for them at a fixed price and fixed time, whatever the parties may think, the relation is not that of principal and agent; * * * and, in point of law, the alleged agent, in such case, is making on his own account a purchase from his alleged principal, and is again reselling."

The case of Chickering v. Bastress, 130 Ill. 206, 22 N. E. 542, 17 Am. St. Rep. 309, is in point, and, in its essential features, little different from the case under review, in which it is held that when the identical thing delivered is to be restored, or in its altered form of money—

"The contract is one of bailment, and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, or the money value, he becomes a debtor to make a return, and the title to the property is changed,—it is a sale."

Quoting from Sir William Jones in his work on Bailments:

"It may also be proper to mention the distinction between an obligation to restore the specific things, and a power or necessity of returning others equal in value. In the first case it is a regular bailment; in the second, it becomes a debt."

The court then, commenting upon the facts of the case under review, said that under the contract—

"Pelton & Co. were vested with the power and right of discharging themselves from any further obligations, as respected all the pianos mentioned in any one invoice, by paying to the Chickerings the negotiable promissory note given therefor, but which, for the purpose of disguising the real nature of the contract, is therein called an 'advance.' In our opinion, it was not a contract of bailment, and the provisions authorizing Pelton & Co. to determine solely for themselves at what prices they would sell the pianos from their store is almost conclusive that in reality they were not acting as the agents or factors of the Chickerings, but that, with the further provision that they were to bear as their proper burden all the expenses of shipments, etc., the same precisely as purchasers, would leave no doubt that the contract was not one of bailment, or of principal and factor. The form of agreement was that of consignment for sale, but its real purpose was to cover up

a sale, and preserve a lien in the Chickerings for the price of the pianos. The invoices used are in perfect harmony with this view. They contained conditions which were to be considered as agreed to, and one of them was, 'The agents of this firm are its customers, who are engaged in selling its pianos in the territory allotted to them. Such customers are not agents in any sense known to the law,' etc. Then follows: 'It is agreed that the pianos specified in this bill are bought and sold upon the conditions herein set forth.' It is true that the word 'consigned' was written across the bill, but there is no magic in that word which can take from the transaction its real character."

In Thompson v. Paret, 94 Pa. 275, the court says:

"Whatever the form of the agreement, if its purpose was to cover up a sale, and preserve a lien in the vendors for the price of the goods, it was void, as respects creditors, whether the credit was given before or after the delivery of the goods. A consignment for such objects is no better than any other device."

The case of Plow Co. v. Porter, 82 Mo. 23, decided by the supreme court commission, in which I concurred, so much relied upon by the claimant as establishing that Rabenau was a mere commission merchant for the sale of these goods, is in exact accord with the foregoing distinction. It will be observed on reading the contract in that case that "the party of the first part further agrees to pay the party of the second part $6.40 for selling each wood or iron beam cultivator," etc. The consignee had no other interest in the property than to sell at the fixed price; accounting, as a matter of course, to his principal for all sums received above that price. The same is true of the case of Peet v. Spencer, 90 Mo. 384, 2 S. W. 434. What the general and particular facts in that case were, the report does not advise us. It is again observable that in the instruction (1) asked by the plaintiffs, which the court held should have been given, it was expressly predicated of the fact that Fallis & Lichliter "were to sell the goods at a certain price to be fixed by the plaintiffs, and that Fallis & Lichliter upon all sales were to receive fifteen or twenty cents a box, according to the size of the box, whether sold by themselves or plaintiffs' agents." So that the case turned upon the fact that they were to sell at a fixed price,—no more and no less. Whereas, in the case under review here, it is perfectly evident that Rabenau was at liberty to sell the goods consigned to him at twice the price at which he was to account to Bradley, Alderson & Co., and he could pocket the entire profits,—a right utterly inconsistent with the relation of principal and agent, or that of principal and factor. On the other hand, the goods were shipped to him f. o. b. cars Kansas City, and from that instant on they were completely at his risk. He was to pay for the carriage; sustain all loss resulting from fire or the elements, or other cause; pay insurance; house, protect, and pay taxes thereon; and in any event he was to account to the claimant for the price fixed in the contract of sale, no matter what his loss might be. Under this contract the consignee could, if he had so desired and elected, have sent to Bradley, Alderson & Co. the cash for the goods at the price fixed in the schedule, and they would have been compelled to receive it, and the goods and all

profits arising therefrom would have been absolutely the property of Rabenau.

But it is said the contract provides that all goods on hand at given dates said party of the second part "agrees to purchase and to pay and settle for the same" at certain times, with 8 per cent. interest from maturity, at the option of the first party. This is nothing more than a time fixed when the claimant, as the seller, could compel the consignee to take and pay for the goods. It is entirely optional with "the party of the first part,"—an unheard-of provision in a contract between principal and factor.

Stripped of its names, "consignment contract," "parties to receive and sell the same on consignment," and "agent," and reduced to its last analysis, this contract is little different from an ordinary contract of sale. If a country merchant sends in an order to a wholesale house in Kansas City for goods to be shipped to him according to a price list furnished by the seller, the commission merchant usually delivers the goods f. o. b.; that is, free on the cars for shipment. If they are damaged in transit, burned up by fire, destroyed by the elements, or stolen, it is the loss of the purchaser. He stores them at his risk, and pays taxes and insurance thereon. He may pay for the goods at such times and on such terms as may be agreed upon. If he makes a profit, it is his. If he sustains a loss, it is his. These and like provisions in this contract are nothing more than a greater security for the seller, to insure him in getting his money at the stipulated price.

Furthermore there is urged in support of the finding of the referee (and that seems to have been what most influenced his judgment) the fact, which, against the objection of counsel, he permitted to be shown in pais, that Rabenau kept these agricultural implements, machinery, etc., in a separate warehouse, which was attached to his main store building, and that he put upon it a sign indicating that they were the goods of Bradley, Alderson & Co., and that he so sold them to customers. There was no occasion in law to resort to evidence aliunde as to the meaning of the contract in question. There being no latent ambiguity in the contract, parol evidence to aid in its construction and application was inadmissible. As said by the court in Burress v. Blair, 61 Mo. 133, 139:

"The question upon which the decision of this case must turn is whether the contract under consideration is capable of an intelligent construction, and its application to its subject-matter is not left in doubt from its own language, without any resort to extraneous evidence. If it was, then its construction devolved upon the court, as a matter of law, and it was improper to shift the responsibility on a jury."

But conceding the admissibility of this evidence, what significance should be attached to it? The putting up of signs or placards that the goods were from the Bradley-Alderson house was nothing more than a means of advertising the house and the quality of the goods. And be it conceded that Rabenau did, in selling the goods, say to purchasers that he was selling them for Bradley, Alderson & Co., it is quite apparent from the whole examination of the bankrupt that he resorted to this merely as a "trade trick," so that, when custom-

ers would try to "jew" him down, he would tell them the price was fixed by Bradley, Alderson & Co., and he was not at liberty to sell for less, when, as a matter of fact, he was selling at his own price, and not at the figures at which he bought. It hardly lies in his mouth, when the trustee comes to claim these goods for the benefit of the general creditors, that he should put forth this "trick of the trade" to alter the legal construction of his written contract. It is furthermore a well-settled rule of construction that where a person, like a merchant, frames and has printed contracts of this character, "the language of the instrument is to be construed against the person who proposes it, rather than against the person who is invited to accept it," for the reason "that men are supposed to take care of themselves, and that he who chooses the words by which a right is given ought to be held to the strict interpretation of them, rather than he who only accepts them." Gillet v. Bank, 160 N. Y. 549, 555, 55 N. E. 292, 294.

While not deemed of controlling effect, the court may advert to a third paper, found in the evidence in this case, in the form of an order by the bankrupt, of the same date as the others, addressed to Bradley, Alderson & Co., Kansas City, Mo., to ship to him at Fordland, Mo., "the following goods at the prices named below, for which we agree to make settlement according to the terms and conditions named below or attached hereto." Then follows the enumeration of the articles ordered. And at the close of the enumeration, in the handwriting of Rabenau, are the words: "Terms on Har. Ct. 11/11/01. On the balance of this order, 90 days; 2 per cent. discount 10 days. Fill this out of Atchison goods, if possible. Ship via Gulf R. R.,"—concluding with printed provisions to the effect that the goods are at Rabenau's risk while in transit, and the time when damages are to be claimed for shortage, and the like; limiting the right of countermand of the order; that no goods were to be returned to Bradley, Alderson & Co. without previous agreement; that actual freight and cost of handling may follow as back charges on all shipments from Kansas City, if sold at factory prices; that the goods ordered and the proceeds of sale are to remain the property of Bradley, Alderson & Co., and be subject to their order when they may deem themselves insecure, and until all the conditions of this order, and subsequent shipments under same, are complied with, including the final payment for the goods shipped; and agreeing to be responsible for all goods shipped under the contract, on account of loss or damage by fire or the elements; and in the event of his selling out or giving deeds of trust, and the like, then the goods shipped under the contract are to become immediately due and payable, at the election of Bradley, Alderson & Co. If such methods can be employed by wholesale merchants in disposing of their goods through the country, and be upheld on the ground of a mere bailment as between merchant and factor, the statute of the state to cure the abuses that grew up under conditional sales of personal property might as well be abolished.

Under the ruling in Re Pekin Plow Co., 50 C. C. A. 257, 112 Fed. 308, and the ruling by this court in the case of Plow Co. v. Spilman,

117 Fed. 746, that the trustee in bankruptcy stands in the same position as the creditors of the estate pursuing the goods under legal process, the trustee is entitled to claim the goods as against the vendor under a conditional sale.

The exceptions to the ruling of the referee must be sustained, and the cause remanded, with directions to disallow the claim in question as a preferred claim.