From George R. Barnett, Harrisburg, Pa.

---

## United States Asbestos Co. v. Forney and Bitzer, Receivers.

*Bailment or conditional sale—Sales on consignment—Fraud as to creditors.*

1. Where, under the terms of a contract, goods to the value of $1500 were to be consigned and continue to be consigned to the defendant company by the plaintiff company for sale by it to customers, the consignee to have as commissions all it obtained for the goods above a scheduled price, and there being no stipulation for the return of, or payment for, them by the consignee, or that any of the goods would ever become the property of the consignee, the transaction was a bailment and not a conditional sale and not fraudulent as to creditors.

2. The plaintiff company could end the contract under certain circumstances, and this implied the right to take possession of the unsold goods, and the fact that the defendants' commissions were not fixed did not affect this right.

Replevin. Rule for judgment for want of a sufficient affidavit of defence. C. P. Lancaster Co., Aug. T., 1926, No. 53.

*Zimmerman, Myers & Kready*, for rule.

*John B. Graybill* and *Charles W. Eaby*, contra.

HASSLER, J., Oct. 9, 1926.—This writ of replevin was issued at the instance of the plaintiff to obtain possession of a quantity of asbestos lining, packing, etc. In its statement it alleges that it delivered to the General Tire and Sales

Company certain brake lining, etc., under a written contract, which it attached to the statement. This contract, dated April 29, 1924, provides that the plaintiff company "hereby agrees to consign to the General Tire and Sales Company . . . for sale . . . asbestos brake lining, etc., to the approximate value of fifteen hundred ($1500.00) dollars, and so continue as long as, in the opinion of the company, this will not conflict with other of their distributors now or which may hereafter be established in the above mentioned counties, and so long as, in its opinion, the said partnership is diligently, faithfully and successfully devoting its efforts to selling said consigned product." No express provision is contained in the contract for the return of the goods to the plaintiff company, nor is it stipulated that the defendant company is at any time to pay for the unsold goods or that the same shall ever become its property.

In its affidavit of defence the defendants admit the truth of all these allegations in plaintiff's statement, and aver that they were appointed receivers of the General Tire and Sales Company on a creditor's bill, in which it is alleged that the sales company was insolvent, which fact was admitted in the answer to the bill filed by its officers.

In order to have this rule for judgment for want of a sufficient affidavit of defence discharged, it is contended on behalf of the defendants that the transaction set forth in the agreement between the plaintiff and the General Tire and Sales Company is a conditional sale, and as they, the defendants, stand in place of, or are representatives of, the creditors of the latter company, the plaintiff is not entitled to recover possession of the goods in question, for the reason that conditional sales are fraudulent as to creditors of the vendee. In support of the contention that a vendor is not entitled to the possession of goods sold by a conditional sale as against representatives of the creditors of the vendee, Duplex Printing Press Co. *v.* Clipper Co., 213 Pa. 207; Philadelphia Trust Co. *v.* Traction Co., 258 Pa. 152; Plow Co. *v.* Receivers of Lancaster County Farmers Ass'n, 39 Lanc. Law Rev. 504, are cited.

These cases fully sustain this contention, but we do not think they have any application, for the reason that the transaction between the plaintiff and the General Tire and Sales Company is not a conditional sale. The goods, under the terms of the contract, were consigned to the General Tire and Sales Company for sale by it to customers. They were never to become its property, nor was it ever to pay for them. The plaintiff company could end the contractual relation between it and the General Tire and Sales Company under certain circumstances, and it follows that it could take possession of its goods which were unsold by its consignee whenever it did so end the contract.

In Peek et al. *v.* Heim et al., 127 Pa. 500, it is said: "Where goods are consigned to a factor for sale, they remain the property of the consignor and are not subject to the debts of the factor, and no ingenious contract is required to protect them from his creditors."

Numerous cases sustain this contention. In Keystone Watch Case Co. *v.* Fourth Street National Bank, 194 Pa. 535, goods were consigned by a manufacturer to a retail dealer to sell, the proceeds to be at once remitted to the owner. The owner could terminate the contract and take back its goods at any time. When a certain amount was paid, the balance of the goods were to be the property of the consignee. It was held that the contract was a bailment and not fraudulent as to creditors of the consignee. In delivering the opinion of the court, Justice Dean, referring to the case of Clow *v.* Woods, 5 S. & R. 275, the leading case on this subject, said: "Under that ruling, the cases were rare where, as to creditors, the ownership of the chattels could be in one and the possession in another; in such circumstances, with few exceptions, the

transaction was constructively fraudulent as to creditors. But in the long line of cases following it, step by step, the rule has been so softened that now it may be said, with few exceptions, where the purpose of the contracting parties was, as between themselves, an honest one, and there was no concealment as to creditors of its true nature, the contract is not constructively fraudulent; in other words, the law will be slow to hold the parties scamps, constructively, if the contract, in view of its purpose, was actually an honest one. . . . It is not seriously argued that . . . the consignees were other than agents of the owners, but it is earnestly argued that this further stipulation constituted the transaction a conditional sale, with an attempt by the vendor to retain a secret lien upon the goods, which made void the contract as to creditors.

" 'The undersigned is not to receive any allowances for services or expenses out of the proceeds of the sales made by it hereunder, but its only benefit and compensation is to be this: If said Keystone Watch Case Company shall continue the undersigned as trustee hereunder until out of the said sales said Keystone Watch Case Company shall have received the sum of $12,936.91, the balance of said goods then remaining unsold and the outstanding accounts shall become the individual property of the undersigned.'

"We do not see that this stipulation makes any change in the nature of the transaction. It simply fixes the extent of the agent's compensation; makes it to depend solely on the sale price in excess of the schedule value. The owners must get $12,936.91, and no less; the agent shall have as compensation the difference between that sum and what he succeeds in getting for the goods in excess of it. His character is not changed from an agent to sell into that of a purchaser."

In McCullough *v.* Porter, 4 W. & S. 177, on the same subject, Chief Justice Gibson said: "The plaintiffs simply agreed to consign goods to an insolvent friend, to be sold on their account for not less than the invoice prices, and the proceeds to the value of those prices were to be remitted to them or the goods returned. Thus, the excess of the sales over the invoice prices was to be the amount of the commissions, and that it was to be contingent is the only feature of the case which differs it from an ordinary consignment or commission. Hence, it is urged with apparent plausibility that the same consequences would be produced by a sale. But at whose risk were the goods in the custody of the consignee? The very purpose of the arrangement was to protect them from his creditors, and to effect it required that they should be in reality the property of the consignors, who must, consequently, have agreed in good faith to take upon themselves the risks incident to the ownership in order to carry out the plan."

In Hallet & Davis Piano Co. *v.* Fisher, 83 Pa. Superior Ct. 408, Judge Keller says: "We are of the opinion that the court below was correct in deciding that the transaction was a consignment and not a sale; that the property in the goods never passed from the plaintiff to Williamson. The agreement provided for the shipment of the goods on consignment and the sale of them by Williamson for the plaintiff and his accounting to the latter for the purchase price left certain discounts. It fixed the commissions which Williamson was to receive for his services as agent in disposing of the pianos, and provided for the return of the identical pianos, etc., in the event that Williamson was unable to sell them. There was no sale of the goods to Williamson and no title to them ever passed from the plaintiff to him."

While in the present case no stipulation for a return of the unsold goods is contained in the contract, it is certainly implied that, upon the termination of

the contract of consignment by the plaintiff, it was entitled to a return of its goods in the possession of its consignee, because no sale of them was made to it, and they were not, under any circumstances or conditions, to become its property. The fact that the commission which the consignee was to have for selling the goods consigned to it was not fixed in the contract does not affect the plaintiff's right to possession of the goods which were not sold when the contract was terminated. All of the amount obtained from their sale in excess of the price at which the goods were scheduled was to be the commission of the consignee. The contract, in our opinion, was not to maintain a secret lien on the goods, but to retain the ownership in them until they were actually sold, when the General Tire and Sales Company was to remit to the plaintiff the price mentioned in the contract and to retain any excess from their sale as its commission. It acted in selling the goods as the agent of the plaintiff and not as the owner of them. The transaction was not a conditional sale and not fraudulent as to creditors. As the affidavit of defence contains no other defence, it is insufficient to prevent judgment.

The rule for judgment is made absolute and judgment is entered for the plaintiff.

From George Ross Eshleman, Lancaster, Pa.