DAVIS v. CROMPTON et al.

(Circuit Court of Appeals, Third Circuit. December 20, 1907.)

No. 21.

1. BANKRUPTCY—PETITION FOR REVIEW—ISSUES REVIEWABLE.

On a petition to review the judgment of a district court in bankruptcy, the respondent may rely upon any ground disclosed by the record to support the judgment, although upon such ground the decision may have been adverse to him.

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—VALIDITY OF CONDITIONAL SALE CONTRACT—LAW GOVERNING.

The validity of a conditional sale contract by which title was reserved in the seller as against the trustee in bankruptcy of the purchaser depends upon the law of the state in which delivery of possession thereunder was made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 275.]

3. SAME.
> Under the law of Pennsylvania, the title reserved by a seller under a contract of conditional sale until full payment of the purchase money in the absence of actual fraud is valid as against the purchaser and all others except creditors who have acquired a lien by attachment or execution, and in such respect a trustee in bankruptcy of the purchaser succeeds only to his title and rights.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 275.]

4. SAME—LEVY BY JUDGMENT CREDITOR—DISCHARGE BY BANKRUPTCY PROCEEDINGS—SUBROGATION OF TRUSTEE.
> Under Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], providing that all levies or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void in case he is adjudged a bankrupt, and the property affected shall be deemed wholly discharged and released from such levy or lien "unless the court shall on due notice order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate," where a receiver in bankruptcy obtained a restraining order from the court and took possession of property of the bankrupt from the sheriff who held it under a levy, the lien of such levy was wholly discharged, and the trustee could not thereafter assert rights thereunder as against an adverse claimant of the property.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Pennsylvania, in Bankruptcy.

S. W. Cooper, for petitioner.
Wm. A. Carr, for appellees.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. This case comes before us upon the petition of the trustee in bankruptcy of the Arkonia Fabric Manufacturing Company, to review, in matter of law, an order of the District Court for the Eastern District of Pennsylvania, sitting in bankruptcy, affirming certain findings of a referee in bankruptcy. The pertinent facts, as disclosed in the said petition, and in the record accompanying it, are as follows:

On September 7, 1906, a petition in involuntary bankruptcy was filed against the Arkonia Fabric Manufacturing Company, and on September 12th following, the petitioner was appointed receiver of the said company. On October 5, 1906, the said company was adjudged a bankrupt in the court below, and on the 3d of November, 1906, the petitioner was duly appointed trustee of the estate of the said bankrupt. Among other property which came into his hands, first as receiver and afterwards as trustee, were 10 looms claimed by the Crompton-Thayer Loom Company, a partnership trading under that name, and the appellee in the case before us. The claimants filed a petition in the court below, setting forth that the said looms belonged to them, and thereafter, under order of the court, upon entering into a bond in the sum of $4,000, conditioned that they would prosecute their claims before the said District Court, or referee, the said looms were delivered into their possession. The claimants thereupon submitted the question of their title to the said

looms to David W. Amram, Esq., referee in bankruptcy, by petition, and answers were filed by the said trustee. After hearing, the referee decided in favor of the title of the claimants to the said property and against the right of the trustee in bankruptcy to hold the same. The said trustee thereupon filed a petition, asserting that the said order and judgment of the said referee was erroneous, and praying that the issue might be certified to the District Judge for review. The learned District Judge sustained the judgment of the referee in a per curiam opinion, in order, as stated by said judge, that the matter might be speedily brought before this court for a determination of the rights of the parties. The case before the referee is stated in the opening paragraph of his opinion, as follows:

"The issues in this proceeding are raised by petition of the Crompton-Thayer Loom Co., claiming title to ten looms used by the bankrupt at its mill in Philadelphia, and answers of trustee denying claimant's title. These looms were found in possession of the bankrupt at the time of bankruptcy and came into the hands of the receiver. The claimant avers that the looms were delivered by it to the bankrupt as a bailment under a contract dated April 9, 1906, which contract is in form a so-called 'installment lease' or 'bailment lease.' The trustee in bankruptcy contends, on the other hand, that the lease of April 9, 1906, does not contain the entire contract between the parties, but that the contract is to be found in a series of letters which passed between the claimant and the bankrupt, beginning January 24, 1906, and that the lease of April 9th was merely executed in accordance with the contract established by this correspondence and for the purpose of carrying out the terms thereof, and that the contract is one of conditional sale and title to the looms is now in the trustee."

After a careful review of the evidence, which he says was "practically entirely documentary, consisting of a file of correspondence and the book entries of the claimant," the referee found that the real character of the contract between the claimants and the bankrupt, was not determined by the existence of the so-called installment or bailment lease, but by the real intent of the parties, as evidenced by the documentary evidence referred to, and that, under the law of Pennsylvania, the contract was one of conditional sale. Nevertheless, the referee was of opinion, and so decided that as the trustee in bankruptcy stood precisely in the shoes of the bankrupt with regard to the title to this property, and as the bankrupt had not complied with the conditions upon which alone the sale was to be complete and the title of the vendor divested, the same remained in the vendor, and was paramount to that of the trustee in bankruptcy, unless the latter complied with the conditions imposed by the contract of sale. It is admitted that, if this transaction were really a bailment by way of lease, the bankrupt, as lessee, at and before the time of the bankruptcy, would have had no title to the goods in question, except its possessory title under the lease; on the other hand, the title of the lessor remained, as it originally was, good against all the world, without exceptions. The claimants, therefore, sought to maintain that the contract with the bankrupt was such a lease. Though the court below decided that the transaction in question was one of conditional sale, it also decided in favor of claimants, that under the circumstances the

158 F.—47

title of the vendor was good as against the trustee in bankruptcy. The claimants, therefore, were not in a situation to ask for a review. Counsel for the appellant on this ground objected that the appellees had no right in this court to contest the finding of the court below, that the contract between the parties was not a bailment. We are of opinion, however, that in maintaining the decision of the referee, as affirmed by the District Court, the appellees may rely upon any ground disclosed by the record upon which that decision might be thought to be maintainable, even though it be not the ground upon which that decision was made. We agree, however, with the conclusion, that the transaction in this case was one of conditional sale, and not of bailment. The view we take of the rights of the parties to the issue before us, renders it unnecessary that we should discuss the grounds of our agreement with this conclusion.

That in a sale of personal property there can be a delivery, and yet the vendor retain title until the purchase price be paid, or other condition performed by the vendee, is a generally accepted doctrine in the jurisprudence of this country and of England. In many of our states, it is provided by statute that such sales, though valid between the vendor and vendee, are not so as to creditors, or as to bona fide purchasers for value without notice. In all of them, perhaps, as also in the courts of the United States, are some such limitations imposed upon this doctrine of conditional sales, as are recognized as being substantially within the spirit of the statute of 13th Elizabeth, which was intended "for the avoiding and abolishing of feigned, covinous, and fraudulent feoffments, gifts, grants, alienations, etc., etc., as well of lands and tenements, as of goods and chattels * * * devised and contrived of malice, fraud, covin, collusion, or guile, to the end, purpose, and intent to delay, hinder, or defraud creditors." Indeed, the principle of this statute has been embodied in the law of all the states. As said by the Supreme Court in Clements v. Moore, 6 Wall. 312, 18 L. Ed. 786, quoting Lord Mansfield, "the common law, without the statute, would have worked out the same results."

The precise extent to which such a conditional sale as we have in the present case, must be held invalid as to creditors, whether general or subsequent, and as to bona fide purchasers, mortgagees and pledgees, without notice, must depend upon the law of the state in which delivery of possession under the conditional sale has been made. The statute of 13th Elizabeth has been adopted as part of the common law of Pennsylvania, but we must look to the decisions of the courts of that state to ascertain in what sense the words, "bargains and conveyances of goods and chattels," "to the end, purpose and intent to delay, hinder or defraud creditors," shall be "utterly void, frustrate and of none effect," are applicable to a conditional sale. Though the language of the courts of Pennsylvania in the earlier decisions, as in Martin v. Mathiot, 14 Serg. & R. 214, 16 Am. Dec. 491, may have been strict and unqualified in asserting the doctrine that possession separated from property was a badge of fraud as against creditors generally, it is to be

noted in that case, as in others, that the controversy was between the vendor and the sheriff, who had levied an execution on behalf of a creditor, or between the vendor and creditor himself in such execution, who had obtained a specific lien thereby. As well said by the learned referee:

"Modern business has recognized the necessity of such contracts, and the immense growth of business transactions made under so-called 'bailment leases' or 'installment leases,' testifies to this change of sentiment. In principle, I see no difference in the economic effect of delivery of goods under a 'bailment lease' or under a contract of conditional sale. In the one case, as in the other, property is delivered with the intention of being sold upon the performance of certain conditions. In the contract of bailment, the bailee must pay certain rental, and at the expiration of the rental period, he may, upon complying with certain formalities, become the owner of the property leased. In a contract of conditional sale, precisely the same effect is intended to be produced, except that the conditional vendee does not become the owner of the property until after he has completed the payments of the purchase money. So far as creditors of the appellee or vendee are concerned, the form of the contract makes no difference."

The object of both forms of contract is the same, and the dissociation of ownership from the possession is intended as security to the vendor for the payment of the purchase money, according to the terms of the contract of sale. In case either of a bailment lease or of a conditional sale, the separation of ownership from possession is a dominant incident. The Supreme Court of Pennsylvania, in a late case, Post v. Berwind White Coal Mining Co., 176 Pa. 297, 35 Atl. 111, decided in 1896, cited by the referee, has not condemned such separation of ownership and possession as a badge of fraud, per se, but confines itself to a practical statement of the extent of the right of creditors of the vendee as to such sales. The issue raised on the sheriff's interpleader in this case was referred, in accordance with the act of assembly in that behalf, for decision, to Frank P. Prichard, an eminent member of the Philadelphia Bar. The following excerpt from his opinion, afterwards affirmed by the Supreme Court, clearly states the law of Pennsylvania, as to the question now under consideration:

"The legal title reserved in the vendor, or in the trustee for his benefit, is a perfectly valid title. It is not void, but is good between the parties and as against volunteers. Under the law of Pennsylvania, however, it is invalid as to attaching creditors of the vendee. This right of the attaching creditor is an absolute one, irrespective of any actual fraud or notice. It can be asserted, however, only in case the attaching creditor has acquired a lien upon the property. The outstanding title in the vendor is not a fraud upon the creditor as such. * * * It is not merely the fact that he is a creditor that gives him the right, but the fact that he has a lien acquired while the vendee was in possession as owner. * * * The existence of this lien is essential to enable him to contest the outstanding legal title."

In affirming this opinion, the Supreme Court, by Mitchell, J., used this language:

"The vendor's title is good against all the world, but certain excepted parties, to wit, creditors of the vendee having a lien by levy or attachment on the property, and such lien must be acquired while the property is in the ownership or possession of the debtor."

We take the foregoing to be a correct statement of the extent to which the 13th of Elizabeth is applicable in Pennsylvania to conditional sales, as to which there is no suggestion of actual fraud. In this case, the title to the property in question, though sold and delivered to the bankrupt, was, by the terms of the sale, expressly reserved to the vendor until payment of the purchase money, according to the terms of said contract of sale, had been fully made.

The contention of counsel for appellant is, that the rule in Pennsylvania is an exception to what, he seems to admit, is the rule in most of the states, and that under the statute of 13th Elizabeth, in force in Pennsylvania, any sale of goods delivered to the vendee, in which the vendor retains title, is "fraudulent" as against creditors, in the sense of being affected with actual fraud. This contention cannot be maintained. We have seen in the case just quoted from, that the Supreme Court of the state does not so hold, but distinctly rejects such an interpretation of the statute as would put an honest and valid conditional sale in the category of such cases as In re Garcewich, 115 Fed. 87, 53 C. C. A. 510, upon which counsel for petitioner seems to rely. In that case, however, the Circuit Court of Appeals was careful to distinguish the facts upon which its decision rested from such as those in the case at bar. They said:

"We think the court below erred in viewing the case as one in which there had been a valid conditional sale, good as against creditors. If the sale had been of that character, we think the decision would have been correct; but, being a fraudulent one, it was void as to the trustee. Under the present bankrupt act, as under previous bankrupt acts, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt."

In the Garcewich Case, therefore, there was a distinct recognition of the right of the conditional vendor as against the trustee in bankruptcy, in cases unaffected by actual fraud. The title of the petitioners, therefore, under the law of Pennsylvania, to the property in question at the time of the adjudication of bankruptcy, was good, not only as between the vendor and vendee, but against all the world, inasmuch as there were no creditors of the vendee who had at that time specific liens, by levy or attachment, on the said property.

It has been often declared by the Supreme Court of the United States, that under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt. It would seem that no other interpretation of section 70 of the act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), consistent with the rights and vested interests of third parties, could be maintained. The trustee in a certain sense is the bankrupt. The bankrupt's title is his title, whether it be to things in possession or to choses in action. His title cannot rise higher than that of the bankrupt, so as to impinge upon or destroy the interest in or title to property, good as against the bank-

rupt himself. It is true, that, by the language of section 70, the trustee of the estate of the bankrupt is "vested, by operation of law, with the title of the bankrupt, as of the date he was adjudged a bankrupt, * * * to all * * * (5) property which, prior to the filing of the petition, he could, by any means, have transferred, or which might have been levied upon and sold under judicial process against him." But, taking the title of the bankrupt as it existed in him at the time of the adjudication, the trustee takes it subject to the superior title of the vendor. Otherwise, the title of the trustee would be superior to the title held by the bankrupt, and therefore not the title of the bankrupt to the property described in clause 5 of section 70, but one entirely different therefrom. It is this precise title, and no other, which is vested by operation of law in the trustee. These propositions were all distinctly affirmed by the Supreme Court in the recent case of York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. That was a case of conditional sale. The District Court and Circuit Court of Appeals had held that the general creditors were entitled to have the plant of the York Manufacturing Company (the vendor in the conditional sale to the bankrupt), sold for the payment of their claims, because of the failure of that company to file the conditional sale contract, as required by the Ohio statute, and that such failure rendered the contract void as to creditors. The Circuit Court of Appeals for the Sixth Circuit affirmed the judgment of the District Court. On appeal from this decree, the Supreme Court reversed the judgment of the Court of Appeals and of the District Court, and decided that "the York Manufacturing Company had the right, as between itself and the trustee in bankruptcy, to take the property under the unfiled contract with the bankrupt, and" that "the adjudication in bankruptcy did not operate as a lien upon this machinery in favor of the trustee as against the York Manufacturing Company."

The statute of Ohio, relating to chattel mortgages, declared a mortgage absolutely void as against creditors of the mortgagor, unless the mortgage, or a true copy thereof, should be deposited forthwith, as directed in the act. The Supreme Court of Ohio held that the mortgage was not void for lack of filing, as between the parties thereto, but that the statute only avoided the instrument as to those creditors who, between the time of the execution of the mortgage and the filing thereof, had taken steps to "fasten upon the property for the payment of their debts." As against such as had in the interim secured liens by attachment, execution, or otherwise, the mortgage would be void. The Ohio statute, requiring the filing of contracts of conditional sales, has a similar provision, making unfiled contracts void as against creditors. As to this statute, the Supreme Court of the United States, in the case just referred to, says:

"We have not been referred to any decision of the Supreme Court of Ohio, as to the meaning of the statute requiring the filing of contracts of conditional sales, but we concur with the Circuit Court of Appeals in this case, that the statute would render the unfiled contract void as to the same class of creditors mentioned in the chattel mortgage statute. Therefore the contract would be void as to creditors who, before its filing, had 'fastened upon the property' by

some specific liens. As to creditors who had no such liens, being general creditors only, the statute does not avoid the sale, which is good between the parties to the contract."

This case, therefore, in its facts, is similar to the one at bar, the Supreme Court of Pennsylvania having held, as we have seen, that in cases of conditional sale, the vendor's title is good against all the world, but certain excepted parties, to wit, creditors of the vendee having a lien by levy or attachment on the property, acquired while the property is in the possession of the debtor.

In the "Cassell" Case, as in the case at bar, it was contended that the "adjudication in bankruptcy was equivalent to a judgment or other specific lien upon the machinery", and the Circuit Court of Appeals held that the seizure by the court of bankruptcy operated as an attachment and an injunction for the benefit of all persons having interest in the bankrupt's estate. As to this, the Supreme Court says:

"We are of opinion that it did not operate as a lien upon the machinery, as against the York Manufacturing Company, the vendor thereof. Under the provisions of the bankrupt act, the trustee in bankruptcy is vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when the trustee's title accrued. At that time, the right, as between the bankrupt and the York Manufacturing Company, was in the latter company to take the machinery on account of default in the payment therefor. The trustee under such circumstances stands simply in the shoes of the bankrupt, and as between them he has no greater right than the bankrupt. This is held in Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. The same view was taken in Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577."

As to the dictum of the Chief Justice in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405 "that the filing of the petition (in bankruptcy) is a caveat to all the world, and in fact an attachment and injunction", the court says "it was made in regard to the particular facts in that case. The case itself raised questions entirely foreign to the one herein arising, and did not involve any inquiry into the title of a trustee in bankruptcy, as between himself and the bankrupt under such facts as are above stated." We agree, therefore, with the learned referee in the court below, that the case of the York Manufacturing Company v. Cassell is of controlling and determinative authority in the present case, and we quote with approval the following from his opinion:

"The rights of the trustee, therefore, are strictly defined by section 70a of the act, and it is now clear from the opinions of the Supreme Court of the United States, first, that the trustee stands precisely in the shoes of the bankrupt with regard to the title to this property, and second, that the bankruptcy proceedings in themselves are not tantamount to an attachment or execution for the benefit of all the creditors, and it therefore follows that the bankruptcy court can do nothing else than determine the status of the trustee with regard to the property by the only test provided by the law, namely, the determination of the status of the bankrupt himself with regard to the said property as of the date of his adjudication."

The counsel for appellee is mistaken in supposing that the decision in the recent case of Security Warehousing Co. v. Hand et al., Trustees of the Racine Knitting Co., Bankrupt (decided in May of this year) 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, in anywise challenges

the correctness of the views above stated. The facts of that case are entirely different from those of the one at bar. The Racine Knitting Company, the bankrupt at the time of the adjudication, was the owner of the goods in question, but had taken what purported to be receipts for the same from the warehousing company, which receipts were in turn pledged by the knitting company to various banks, as security for loans obtained from them. The warehousing company had no warehouse of its own, but the knitting company made what pur-- ported to be a lease to it of certain of its premises, where the goods in question were stored, and from which they were not removed, except as sold by the knitting company, the warehousing company receiving a relatively small commission for the use of its name and the issuance of the receipts. It was evidently, under color of warehouse receipts, a device for raising money. In regard to the transaction, the Supreme Court says:

"There was really no delivery and no change of possession, continuous or otherwise. The alleged change was a mere pretense, a sham."

In another place, the court says:

"The title to this property was in the knitting company. There had been no valid pledge of it. * * * The method taken to store the property was, as found by the district court, a mere device or subterfuge to enable the bankrupt to hypothecate the receipts and thus raise money upon secret liens on property in possession of the pledgor and under its control; and such a scheme, the court said, ought not to receive judicial sanction. Such a scheme, under the facts, and as carried out in this case, and with regard to Wisconsin law, was a fraud in fact."

These excerpts from the opinion of Mr. Justice Peckham, who in this case, as in the Cassell Case, spoke for the Supreme Court, sufficiently point to the difference between the two cases. Nothing in this latter case contradicts what was held in the former. On the contrary, both illustrate and emphasize from different points of view, the position here taken. The distinction between the two cases was between fraud in fact and the mere making of a valid conditional sale. Under the facts of the case just cited, the conclusion arrived at was inevitable: that "there was no valid pledge and no equitable lien in favor of the interveners, which would take precedence of the title of the trustee by virtue of the special provisions of the bankrupt act."

It only remains to consider the remaining contention of the appellant, that he had been subrogated by the court below to the rights of the Chautauqua Worsted Mills, plaintiff in a judgment and execution levied upon the property in question, August 29, 1906. As to this, we cannot do better than to quote again the language of the learned referee:

"Under section 67f of the bankruptcy law it is provided that 'all levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of the petition in bankruptcy against him shall be deemed null and void in case he is adjudged a bankrupt.' In this case the Chautauqua Worsted Mills entered judgment and issued execution and levied upon the property on August 29, 1906. The petition in bankruptcy was filed September 7, 1906, whereby the judgment and levy obtained through the legal proceedings in the state court become null and void upon the subsequent adjudication of the bankrupt on

the 5th day of October, 1906. Section 67f further provides that 'the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same and shall pass to the trustee as a part of the estate of the bankrupt.' By the subsequent proceedings in bankruptcy, therefore, the lien of the Chautauqua Worsted Mills was destroyed. The receiver, having obtained a restraining order from the District Court, took possession of the property from the sheriff, and in so taking it took it wholly discharged and released from the lien of the levy. Now, section 67f further provides that such lien shall be deemed wholly discharged and released 'unless the court shall on due notice order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate, and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate aforesaid.' The trustee did not attempt to preserve this lien. It was the receiver who through the restraining order obtained possession of the property discharged of the lien; no proceedings were then taken to preserve the lien, and it was not until April 4, 1907, in the midst of the controversy arising between the conditional vendor (claimant herein) and the trustee, that the trustee filed a petition praying to be subrogated to the rights of the execution creditor, upon which petition an order of subrogation was entered. An examination of the record shows that the execution creditor no longer had any rights at the time the order of subrogation was made, and therefore the trustee took nothing by virtue of the said order."

Concurring, as we do, in these views, it is not necessary to consider whether, if the order of subrogation had been made in time, the bankrupt's estate would be benefited thereby, although a serious question may have been presented in such case; nor are we called upon to say how such a lien, obtained by a single creditor, could be preserved for the benefit of the creditors at large, or at what time or by what proceeding such subrogation can be effected.

We have not thought it necessary to cite the numerous authorities referred to by counsel on both sides and by the referee. They and others, however, have been examined, especially the cases referred to in the Supreme Court of the United States. We think, as we have already said, that the decision of that court in York Manufacturing Co. v. Cassell, is controlling in this case, and we therefore agree with the conclusion of the learned referee, that although the title of the bankrupt passed to the trustee in bankruptcy, yet, inasmuch as said title is invalid against the superior title of the conditional vendor, the latter is entitled to retake the property from the trustee in bankruptcy, unless the trustee complies with the terms of sale, and that, as in this case no attempt to comply with the terms of sale was made, the title of the claimant is superior to that of the trustee in bankruptcy.

The order of the court below is therefore affirmed.