### In re MILLBOURNE MILLS CO.

(District Court, E. D. Pennsylvania. July 9, 1908.)

#### No. 2,837.

BANKRUPTCY — PROPERTY PASSING TO TRUSTEE — PLEDGE OF GRAIN CERTIFICATES.

A bankrupt milling company in Pennsylvania had prior to the bankruptcy issued grain and flour certificates each calling for a certain quantity of grain or flour stored in its mill or grain tanks to be delivered to the holder on demand, and had indorsed such certificates as collateral security for loans. The grain and flour were in the possession of the bankrupt at the time of the bankruptcy, and under the law of Pennsylvania might have been levied upon and sold by attachment or execution creditors. *Held*, that the bankrupt having undoubted title to the property, such title was not divested by the pledge of the certificates, but passed to its trustees in bankruptcy under Bankr. Act July 1, 1898, § 70a (4), c. 541, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), as to property which might have been levied upon and sold under judicial process against it.

In Bankruptcy. On exceptions to referee's report.

H. Gordon McCouch and Henry S. Drinker, Jr., for Fourth Street National Bank.

J. Wilson Bayard, for trustee and creditors.

HOLLAND, District Judge. On June 20, 1907, receivers were appointed under the federal bankruptcy act of 1898 for the Millbourne

Mills Company. On July 1st it was adjudged a bankrupt, and on July 26th the receivers were elected trustees. At various times prior to 1907 the Millbourne Mills Company had applied to the Fourth Street National Bank and other banks for loans, and, as collateral security therefor, the banks took two classes of security—grain certificates and flour certificates. The facts with reference to each class differ somewhat, and the referee dealt with each in a separate report. It is, however, conceded that the same principles govern the disposition of both, Both the flour and the grain covered by the certificates were in the entire possession and control of the bankrupt at the time it was adjudged a bankrupt and the trustees elected. The flour was stored in the mill, with some attempt at separation from the general stock of flour on hand. The grain, however, was in the grain tanks, which were connected to the mill by an apparatus called a conveyer, running from the bottom of the tanks, and by unlocking a slide the grain would be run into the mill to be manufactured into flour. There was no setting apart of any particular grain to cover any particular certificate, the form of which was as follows:

"Grain Certificate.

"Millbourne Mills Company,
Philadelphia.
"No. 2,700.                                                                1906.
"This is to certify that Millbourne Mills Company has stored in its Fire Proof Grain Storage Tanks. 1,000 bushels, #2 Penna. Winter Wheat, unloaded from cars #———, which will be subject to its order, and only deliverable upon the indorsement and surrender of this certificate.
                                        "Benj. P. Hoopes, Supt. of Elevators.
    "Countersigned:  R. S. Dewees, President."

These certificates were indorsed to the respective bank as a pledge or collateral for the notes given by the bankrupt for the money borrowed. The trustees took possession of the flour and grain covered by these certificates, and sold the same subject to the right of the holders of the certificates to claim the proceeds amounting to $50,-284.79. The banks presented their claims, and the referee decided against them, holding that the trustees under the law took the flour and grain covered by the certificates into the estate for the benefit of the creditors generally. In this we think he is right. To this finding the banks took an exception, together with other questions raised, but it is the only one necessary to be considered by the court.

Prior to the decision of the Supreme Court in the case of York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, wherein it was held that a conditional sale of merchandise is good not only between the parties themselves, but is also good as against all creditors of a bankrupt who have not fastened upon it by some specific lien, it was held in this district that the trustee in bankruptcy took the property in the possession of a bankrupt under a conditional sale whether there had been any levy by a creditor or not prior to the adjudication of bankruptcy, and that he took the property for the benefit of the general creditors upon the theory that under section 70a of the bankruptcy act (Act July 1, 1898, c. 541, subd. 5, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) the trustee of the bankrupt

took title to all property "which might have been levied upon and sold under judicial proceedings against him," because in Pennsylvania the courts have held that, while creditors could not levy and sell personal property in the possession of a creditor under a bailment lease, yet this exemption from levy and sale in favor of creditors was not accorded to property in the possession of a creditor upon a contract of conditional sale. York Mfg. Co. v. Cassell, supra, was followed in this circuit in the case of Davis v. Crompton, by the Circuit Court of Appeals, 158 Fed. 735, and it is now settled that the vendor's title to property in the possession of a bankrupt under a contract of conditional sale which has not been fastened upon by a specific lien by way of a levy or an attachment prior to proceedings in bankruptcy is paramount to that of the trustee in bankruptcy, unless the latter complies with the condition imposed by the contract of sale, and that the vendor is entitled to claim such personal property covered by the contract of conditional sale, and take it out of the possession of a trustee in bankruptcy. As we read the cases of York Mfg. Co. v. Cassell, supra, and Davis v. Crompton, supra, the court in both held that the bankrupt never had title to property covered by a conditional sale and was not included in the property to which a trustee in bankruptcy took title under subdivision 5 of section 70a, because that subdivision not only requires that the property to which the trustee takes title shall be property which would have been liable to be levied upon and sold under judicial proceedings against the bankrupt by the creditors, but that the bankrupt must have had some previous title to it, or the rights of the creditors fixed by a previous lien placed upon it by levy or attachment. But neither of these cases go so far as to say that property upon which a creditor could have levied concededly belonging to the bankrupt, to which it had title and possession before the bankrupt proceedings and of which title it had never been divested, although covered by a certificate or pledge as collateral security for a loan, belongs to the pledgee as against the trustee in bankruptcy. The pledge is no doubt good as between the pledgor and pledgee in Pennsylvania as against creditors who have never levied, but, as the title still remained in the pledgor, who is the bankrupt when it is so adjudged, its title passed to the trustees. It is property the title to which passes to the trustees under subdivision 5, section 70a of the act, as property "which might have been levied upon and sold under judicial proceedings against him."

In the case of Security Warehousing Co. v. Hand, 206 U. S. 425, 27 Sup. Ct. 720, 51 L. Ed. 1117, the Supreme Court reviews all the cases, including York Mfg. Co. v. Cassell, supra, which deal under varying phases with the doctrine that the trustee in bankruptcy stands in the shoes of the bankrupt, and that the property in his hands, unless otherwise provided in the bankrupt act, is subject to all the equities impressed upon it in the hands of the bankrupt, and pointedly emphasizes the binding force of subdivisions 4 and 5 of section 70a in the care with which they show that neither section has any application to vest the title in the trustee in the cases reviewed. The facts in this case are nearly similar to those under consideration by the Supreme Court in the case of Security Warehousing Co. v. Hand,

supra, and there the trustee held the property for the general creditors. In that case it was in effect held that where there was no delivery or change of possession, such certificates as those given did not operate as a delivery of the property mentioned therein. It was also held that the general law of pledge requires possession, and it cannot exist without it.

The certificates did not divest the bankrupt of the title to the flour or the grain; and, while the banks could have demanded possession of the property represented by the certificates prior to the bankruptcy proceedings so long as no creditor had levied or attached, yet, as they had not done so, the title to the property had not passed out of the bankrupt at the time of the proceedings in bankruptcy, and was such property as passed to the trustees under section 70a, subd. 5, which might have been levied upon and sold under judicial proceedings against the bankrupt.

The exceptions to the report of the referee are dismissed, and his report confirmed.