In re BEIHL.

(District Court, E. D. Pennsylvania. February 10, 1910.)

No. 3,511.

BANKRUPTCY (§ 184*)—PROPERTY PASSING TO TRUSTEE—INVALID MORTGAGE OF PERSONALTY.

> An insolvent conveyed personal property of which he was the absolute owner to a creditor for the expressed consideration of $1, and took back a lease of the same, also giving a nominal consideration, with the right in the lessee to repurchase if he had paid his indebtedness to the lessor. Held, that the transaction was an attempted mortgage, invalid under the law of Pennsylvania for want of delivery, and that on the bankruptcy of the debtor the property passed to his trustee.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

In the matter of Ernest H. Beihl, bankrupt. On review of order of referee. Affirmed.

Franklin Spencer Edmonds, for George W. Edmonds.

George P. Rich, for trustee.

J. B. McPHERSON, District Judge. The facts of this dispute are not in question, and may be thus stated:

A voluntary petition was filed by the bankrupt on July 2, 1909. A few days before—on June 25th—his landlord had distrained for rent upon the horses and wagons now in controversy. The District Court restrained the sale, and thereupon George W. Edmonds claimed to be the owner of the articles levied upon, averring that Beihl had sold them to him on May 10th, and was in possession under a lease made by Edmonds on the same day. The transaction was as follows: Beihl, who was a retail dealer in coal, owed Edmonds $255.53 for coal previously bought. In consideration of this debt, and of Edmonds' promise to furnish more coal to be used by Beihl in his retail trade, the bankrupt made a bill of sale of the horses and wagons. This document sells the property for an expressed consideration of $1, saying

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nothing about the other considerations. On the same day Edmonds made a lease of the horses and wagons to Beihl for one year from May 15th, at a rental of $1 a month. The agreement provides for the return of the property at.the end of the year in good order, save for reasonable wear, and gives to Beihl an option to buy for $10 within one month thereafter, but expressly declares that Beihl may only exercise this option if he has then paid all his indebtedness to Edmonds. Under these agreements Edmonds delivered to the bankrupt a further quantity of coal, valued at $925. The landlord's claim amounted to $487.73, and it was finally arranged before the referee that Edmonds should pay this sum, should take over the horses and wagons at a valuation of $1,250, and should pay to the trustee the balance in excess of the landlord's claim if it should be decided that the lease was not valid against the general creditors of the bankrupt. The transaction of May 10th was in good faith, but there was no delivery of possession; Beihl continued to use the horses and wagons in his business until the petition in bankruptcy was filed.

Upon these facts the referee (Richard S. Hunter, Esq.) held that "the net result of this arrangement was undoubtedly under the Pennsylvania law a pledge or mortgage of this property," and ordered Edmonds to pay $717.73 to the trustee. In my opinion this order was right. I see no difference in principle between this case and In re Millbourne Mills Co. (C. C. A., 3d Circuit) 172 Fed. 177. There the milling company was the absolute owner of grain and flour in its own possession, and undertook to pledge it by issuing warehouse receipts, but without delivering the property.itself. The attempted pledge was held to be invalid, and, of course, therefore the absolute title had passed to the trustee. This is precisely what happened here. The bankrupt had an absolute title to the horses and wagons in his own possession, and undertook to pledge them by a somewhat roundabout method, but without delivering the property. The bill of sale and the so-called "lease" and the parol contract concerning the payment of the past-due claim for coal—taken together, as they should be taken—clearly amount to a pledge or mortgage of the property. The bill of sale is equivalent to the deed, and the lease and parol agreement constitute the defeasance. Davis v. Crompton, 20 Am. Bankr. Rep. 53, 158 Fed. 735, 85 C. C. A. 633, is not in point. In that case the bankrupt (the Arkonia Fabric Company) never had been the unqualified owner of the looms then in question. A qualified title by a conditional sale was all that the company had ever acquired, and this therefore was all that the trustee could take in succession to the bankrupt's right. No lien by levy or attachment had been gained by any creditor of the bankrupt, and the only disputed point was the extent of the trustee's title. It was held that the trustee did not get more than the bankrupt had to give, and must therefore take the looms subject to the conditions of sale. Here, however, there is no conditional sale. The bankrupt was originally the unqualified owner of the property, and the trustee succeeded to that kind of ownership unless the bankrupt had previously transferred it. He had tried to transfer it; but the effort was of no avail owing to his failure to deliver possession, and

therefore the trustee, although merely the representative of the bankrupt, succeeded to the absolute title. The difference between Davis v. Crompton and In re Millbourne Mills Co. seems to be clear.

The decision of the referee is affirmed.