In re FRANKLIN LUMBER CO.

(District Court, E. D. Pennsylvania. May 6, 1911.)

No. 3,794.

BANKRUPTCY (§ 140*)—CONDITIONAL SALES—CONTRACT—CONSTRUCTION.

Where a written contract for the disposition of a typewriter was in form a contract of lease or bailment, providing for payments of specified sums monthly as rent, with the right of the bankrupt to a bill of sale on its monthly payments amounting to $106, and, though the bankrupt did not make the payments as agreed, claimant made no demand for possession, and took no steps to regain possession, as authorized by the contract, but accepted payments long after they were due, the bankrupt's trustee was not bound by the form of the contract, but was entitled to claim that it was a contract of conditional sale from the beginning, under Bankr. Act July 1, 1898, c. 541, § 47a2, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act Cong. June 25, 1910, c. 412, § 8, 36 Stat. 840, declaring that, if property coming into the custody of the court is claimed by another, the trustee is vested with all the rights, remedies, and powers of a creditor, holding a lien by legal or equitable proceedings thereon, with reference thereto.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In the matter of the bankruptcy proceedings of the Franklin Lumber Company. On petition to review a referee's order, determining the rights of a claimant under a contract for a conditional sale of certain personal property. Affirmed.

D. Hays Solis-Cohen, for trustee.
William F. Berkowitz, for claimant.

J. B. McPHERSON, District Judge. In my opinion the referee's conclusion is right, although I am not wholly in accord with the antecedent reasoning. It is to be noted that section 47a2, as amended by the act of June 25, 1910, applies to the present dispute. Under that amendment, if property coming into the custody of the court be claimed by another, the trustee is vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon. An agreement, therefore, which would previously have been valid between the parties—such, for example, as was considered in Davis v. Crompton, 158 Fed. 735, 85 C. C. A. 633; Id., 209 U. S. 548, 28 Sup. Ct. 759, 52 L. Ed. 921—is no longer necessarily valid against the trustee. He is in the position of a creditor holding a legal or equitable lien, and the agreement is to be scrutinized from that point of view. The contract now in question is as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"* * * Said second party [the bankrupt] has this day received and leased of the said first party one (1) L. C. Smith & Bros. typewriter, bearing factory number 2—39187, for use and hire for the term of seven months, at a rental of one hundred and five dollars, of which sum the said second party hereby agrees to pay to said first party the sum of $30 on the execution of this agreement, and $10 per month thereafter, and one payment of $15, at the office of said first party, without notification or demand. Monthly payments to begin February 14, 1909.

"The said second party further agrees to preserve said property in as good order and condition as received, natural wear and usage only excepted, and to exhibit the same to said first party when desired, and not to remove said property from address above named without the consent of said first party.

"And it is further agreed by said second party to return said property to the party of the first part immediately on the expiration of the aforesaid term. In default of any payment or payments as above stipulated, the said second party agrees to return said property to said first party, and hereby authorizes said first party, its agents or representatives, to search for and remove said property, with or without process of law, hereby releasing and waiving all right of action, civil or criminal, against the person or persons effecting such forcible possession and removal, as aforesaid, and expressly waiving all and every claim for damages therefor.

"It is further agreed between the parties that upon the return of the property at the expiration of the term, upon the payment of $1 by the party of the second part, in addition to the sum paid for rental, the party of the first part will execute a bill of sale of the aforesaid property to the party of the second part.

"It is agreed that there is no other written contract or verbal agreement in connection with this contract."

Assuming that the bankrupt would be bound by the words of this agreement, and could not deny it to be a lease, his trustee is not so bound, and may contend that the contract is really one of conditional sale. In such a contention he may offer any competent and relevant evidence, and it is obvious, I think, that the conduct of the parties may ordinarily throw much light on the true meaning of their agreement. If they treat it as a contract of sale, it makes no difference what name they have given it. A creditor may adopt their own construction, and they cannot successfully object. This is well settled in Pennsylvania and elsewhere. Brunswick v. Hoover, 95 Pa. 508, 40 Am. Rep. 674; Peek v. Heim, 127 Pa. 500, 17 Atl. 984, 14 Am. St. Rep. 865; Ott v. Sweatnam, 166 Pa. 217, 31 Atl. 102. In the present controversy the parties have agreed upon the facts, and the evidence consists of the following statement, in addition to the written contract:

"Payments under this agreement were made in unequal amounts, at irregular intervals, as follows:

| | |
|---|---|
| Feb. 4, 1909 | $10 |
| Feb. 6, " | 20 |
| May 6, " | 10 |
| Dec. 12, " | 15 |
| May 4, 1910 | 15" |

As the referee has pointed out, it is evident by a mere inspection of the evidence that:

"No payments were made in accordance with the agreement. The first payment, on February 4, 1909, which should have been $30, was $10. On February 6th a payment of $20 was made, presumably to complete the first

payment of $30 which should have been made on February 4th. The monthly payments to be made on February 14th, March 14th, and April 14th, were not made, and the first payment after the original $30 was made on May 6, 1909, $10. Thereafter no payment was made until December 12, 1909, so that on August 14, 1909, when the last payment of the $105 stipulated was to have been made, only $10 had been paid."

The report of the referee then proceeds:

"Had there been any intention on the part of the bailee under this agreement to construe his agreement as a contract of bailment, it would have been his duty, in accordance with the terms of the agreement, in default of stipulated payments, to return the property to the bailor, and certainly to do so at the expiration of the aforesaid term of seven months, to wit, August 14, 1909. And it was the corresponding duty of the bailor, upon default of payment and at the expiration of the term, to demand the return of his property. But neither the bailor nor the bailee intended to so construe their agreement. The payment made on December 12, 1909, of $15, was accepted, and thereafter, after an interval of about three months, a further payment, on March 4. 1910, of $15, was made and accepted. The purpose of the parties obviously was not to hire out, but to sell, the machine, and they did not even attempt to follow the form of the agreement of bailment which they had entered into."

I agree with these statements; but I do not agree that the contract has thereby been changed from a bailment to a contract of conditional sale, as other language of the report would seem to suggest. In my opinion, the contract has not been changed, but has only been interpreted, by the subsequent conduct of the parties. In reality, it has always been a contract of conditional sale, although it may be true that the bankrupt himself would not have been permitted to prove its true character. Neither could the trustee have proved its true character until the act of June 25, 1910, was passed; but since that date he has been put upon the footing of a creditor with a legal or equitable lien, and may take full advantage of such rights. Whenever, therefore, such a creditor may attack a contract, in form a bailment, on the ground that it is really a conditional sale, and may support the attack by competent and relevant evidence that throws light on the true meaning of the contract, the trustee has the same right. The mere form of the agreement does not bind him, as it might bind the bankrupt.

The order of the referee is affirmed.